T00051-GAP-RMN Customer Completed signed electronic form held by RouteOne LLC

*Grey Lease*

# TOYOTA
Southeast Toyota Finance

Southeast Toyota Finance
**CLOSED END MOTOR VEHICLE LEASE AGREEMENT**

| LESSEE: Name and Address (include County and Zip Code) | CO-LESSEE, if any: Name and Address (include County and Zip Code) | LESSOR: (Dealer Name and Address) |
|---|---|---|
| LISETTE SANTIAGO | N/A | Toyota of Orlando<br>3575 Vineland Rd<br>ORLANDO, FL 32811<br>(407) 298-4500 |

This is an agreement to lease (the "Lease") the vehicle described below ("Vehicle"). **Lessor** owns the Vehicle throughout the term of the Lease. Dealer is assigning this Lease and Vehicle to _____VT INC as TSTEE WORLD OMNI LT_____ ("Assignee"), and you agree to this assignment. In this Lease, "you" and "your" refers to any person signing this Lease as Lessee or Co-Lessee. "Lessor", "we", "us" and "our" refer to Dealer and any Assignee. The consumer lease disclosures included in this Lease are made on behalf of Dealer, Assignee and (if Assignee is **not** World Omni Financial Corp. d/b/a Southeast Toyota Finance ("SETF")) are also made on behalf of SETF, who will administer the Lease. For purposes of the Federal Consumer Leasing Act only, SETF should also be considered a Lessor. The address for Assignee and SETF is **6150 Omni Park Drive, Mobile, AL 36609**. In this Lease, "(e)" means an estimate.

## Description of Leased Property

| New or Used | Year | Make & Model | Body Style | Vehicle Identification Number | Primary Use | Mileage on Odometer |
|---|---|---|---|---|---|---|
| New | 2019 | Toyota Highlander | SE V6 FWD | 5TDKZRFHXKS353801 | ☒ Personal, Family or Household<br>☐ Business or Agricultural | 12 |

Including: ☐ Automatic Trans.  ☐ Air Cond.  ☐ CD Player  ☐ Cruise Control  ☐ Power Windows  ☐ Leather  ☐ ABS  ☐ Custom Wheels  Other Equipment: N/A

## Federal Consumer Leasing Act Disclosures

| 1. Amount Due at Lease Signing or Delivery (Itemized below)* | 2. Monthly Payments | 3. Other Charges (not part of your Monthly Payment) | 4. Total of Payments (The amount you will have paid by the end of the Lease) |
|---|---|---|---|
| $ 1,650.27 | Your first Monthly payment of $ 475.00 is due on 12/07/2019, followed by 35 payments of $ 475.00 due on the 7th of each month. The total of your Monthly Payments is $ 17,100.00. | Disposition Fee (if you do not purchase the Vehicle) $ 350.00<br>N/A    N/A<br>N/A    N/A<br>Total $ 350.00 | $ 18,625.27 |

### *Itemization of Amount Due at Lease Signing or Delivery

**5. Amount Due At Lease Signing or Delivery:**

| | | |
|---|---|---|
| a. Capitalized cost reduction | $ | 0.00 |
| b. First Monthly Payment | | 475.00 |
| c. Refundable security deposit | | 0.00 |
| d. Title fees | | N/A |
| e. Registration fees | | 82.19 |
| f. Sales/Use tax | | 76.13 |
| g. Florida Fees | | 68.50 |
| h. N/A | | N/A |
| i. N/A | | N/A |

| j. Predelivery Service Fees** | | |
|---|---|---|
| Predelivery Service Charge | $ | 798.50 |
| Electronic Registration Filing Fee | $ | 149.95 |
| Other | $ | N/A |
| Total Predelivery Service Fees | $ | 948.45 |

** These charges represent costs and profit to the Dealer for items such as inspecting, cleaning, and adjusting vehicles, and preparing documents related to the transaction. Total  $ 1,650.27

**6. How the Amount Due at Lease Signing or Delivery will be paid:**

| a. Net trade-in allowance | $ | 122.00 |
|---|---|---|
| b. Rebates and non cash credits | $ | 828.27 |
| c. Amount to be paid in cash | $ | 700.00 |
| d. N/A | $ | N/A |
| Total | $ | 1,650.27 |

### Your monthly payment is determined as shown below:

| 7. | Gross capitalized cost. The agreed upon value of the Vehicle ($ 40,453.09 ) and any items you pay over the Lease term (such as service contracts, insurance, and any outstanding prior credit or lease balance)............ | $ | 41,448.09 |
|---|---|---|---|
| | If you want an itemization of this amount, please check this box. ☐ | | |
| 8. | Capitalized cost reduction. The amount of any net trade-in allowance, rebate, noncash credit, or cash you pay that reduces the gross capitalized cost............ | – | 0.00 |
| 9. | Adjusted capitalized cost. The amount used in calculating your Base Monthly Payment............ | = | 41,448.09 |
| 10. | Residual Value. The value of the Vehicle at the end of the Lease used in calculating your Base Monthly Payment............ | – | 27,578.85 |
| 11. | Depreciation and any amortized amounts. The amount charged for the Vehicle's decline in value through normal use and for other items paid over the Lease term............ | = | 13,869.24 |
| 12. | Rent Charge. The amount charged in addition to the depreciation and any amortized amounts............ | + | 2,037.60 |
| 13. | Total of base monthly payments. The depreciation and any amortized amounts plus the rent charge............ | = | 15,906.84 |
| 14. | Lease payments. The number of payments in your Lease............ | ÷ | 36 |
| 15. | Base Monthly Payment............ | = | 441.86 |
| 16. | Monthly sales/use tax (e)............ | + | 33.14 |
| 17. | N/A............ | + | N/A |
| 18. | N/A............ | + | N/A |
| 19. | N/A............ | + | N/A |
| 20. | Total Monthly Payment............ | = $ | 475.00 |

21. **Early Termination.** You may have to pay a substantial charge if you end this Lease early. **The charge may be up to several thousand dollars.** The actual charge will depend on when the Lease is terminated. The earlier you end the Lease, the greater this charge is likely to be.

22. **Excessive Wear and Use.** You may be charged for excessive wear based on our standards for normal use and for mileage in excess of 12000 miles per year at the rate of 18 cents per mile.

23. **Purchase Option at End of Lease Term.** You have an option to purchase the Vehicle at the end of the Lease term for an amount equal to the amount set forth in Section 10 above and a purchase option fee of $ 350.00, plus official fees and taxes.

24. **Other Important Terms.** See the other sections of this Lease for additional information on early termination, purchase options and maintenance responsibilities, warranties, late and default charges, insurance, and any security interest, if applicable.

SETF 3432 E-Contract (10/19) NEW / USED  FLORIDA        Page 1 of 5        C/S# 3432ec

T278753304-DP278753305 - This copy was created on Sat Dec 07 04:03:51 GMT 2019

**25. OFFICIAL FEES AND TAXES.** The total estimated amount you will pay for official and license fees, registration, title, and taxes over the term of your Lease, whether included with your Monthly Payments or assessed otherwise: $ __1,734.19__. The actual total of fees and taxes may be higher or lower depending on the tax rates in effect or the value of the Vehicle at the time a fee or tax is assessed.

**26. LATE PAYMENT CHARGE.** If any payment is not made in full within **10** days after it is due, you will owe a late charge of **5%** of the part of the payment that is late.

**27. WARRANTIES AND EXCLUSIONS OF WARRANTIES.** The Vehicle is only covered by the warranties and service contracts checked below:
- ☒ A warranty of description of the Vehicle and a warranty against interference with your interest under this Lease.
- ☒ To the extent of your interest under this Lease, the benefit of the standard manufacturer's warranty if the Vehicle is a new vehicle, or the benefit of the remaining balance of the standard manufacturer's warranty if the Vehicle is not a new vehicle.
- ☐ Extended Warranty or Service Contract. Describe: __N/A__

EXCEPT AS EXPRESSLY PROVIDED IN THIS LEASE, LESSOR MAKES NO EXPRESS WARRANTIES COVERING THE VEHICLE. IN PARTICULAR, LESSOR MAKES NO EXPRESS WARRANTIES OF VEHICLE CONDITION, MERCHANTABILITY, DURABILITY OR FITNESS FOR A PARTICULAR PURPOSE OR USE COVERING THE VEHICLE, AND LESSOR EXPRESSLY DISCLAIMS ANY SUCH EXPRESS WARRANTIES. UNLESS PROHIBITED BY LAW, LESSOR MAKES NO IMPLIED WARRANTIES OF VEHICLE CONDITION, MERCHANTABILITY, DURABILITY OR FITNESS FOR A PARTICULAR PURPOSE OR USE COVERING THE VEHICLE, AND LESSOR EXPRESSLY DISCLAIMS ANY SUCH IMPLIED WARRANTIES.

**28. OPTIONAL LIFE AND/OR DISABILITY INSURANCE. LIFE AND/OR DISABILITY INSURANCE COVERING YOUR LEASE PAYMENT OBLIGATION IS NOT REQUIRED TO ENTER INTO THIS LEASE.** If you sign below, we will try to get the coverage(s) checked for the term of this Lease. The premium cost is shown below and will be included in the Base Monthly Payment (see Section 15). The terms of the coverage(s) will be described in the notice or insurance agreement given to you when you sign this Lease. If we cannot get the coverage(s) for you, or if any coverage is canceled, we will credit your account with any refunds we receive.

Insured Name __N/A__

__N/A__ Life Insurance (Lessee __N/A__ Co-Lessee __N/A__ Both __N/A__ ) Coverage under this policy is limited to $ __N/A__ Premium $ __N/A__

__N/A__ Disability, Accident and Health Insurance (Lessee only) Coverage under this policy is limited to $ __N/A__ monthly Premium $ __N/A__

Lessee's signature A __N/A__ Age __N/A__
Co-Lessee's signature A __N/A__ Age __N/A__

**29. FLORIDA LEASE DISCLOSURES**

**THIS IS A LEASE AGREEMENT. THIS IS NOT A PURCHASE AGREEMENT. PLEASE REVIEW THESE MATTERS CAREFULLY AND SEEK INDEPENDENT PROFESSIONAL ADVICE IF YOU HAVE ANY QUESTIONS CONCERNING THIS TRANSACTION. YOU ARE ENTITLED TO AN EXACT COPY OF THE AGREEMENT YOU SIGN.**

Trade-In Vehicle: Year __2019__ Make __Toyota__ Model __Highlander__

Net Credit of Trade-In (from 6 (a)) Used to Reduce the Capitalized Cost: $ __0.00__.

**30. ARBITRATION.** The parties agree that any unresolved Disputes (as defined in Section 61 on the last page of this Lease) shall be submitted to arbitration in accordance with the terms of Section 61. By initialing this Section, you are confirming that you have read and understand this Section 30 and Section 61 and that you agree to the terms of these arbitration Sections. Lessee (and Co-Lessee) initials. B __LS__

**ELECTRONIC CONTRACTING AND SIGNATURE ACKNOWLEDGMENT.** You agree that (a) this Lease is an electronic contract, (b) you will execute this Lease with an electronic signature instead of a written signature, (c) by signing this Lease electronically, you intend to enter into this Lease and for this Lease to have the same effect as if you signed it on paper and (d) we will maintain the authoritative copy of this Lease in an electronic storage system that we use to store authoritative copies of electronic records in our ordinary course of business. If we print a paper copy of the authoritative electronic copy of this Lease and mark that paper copy as the original, then you also acknowledge and agree that (1) your electronic signature authorizes us to issue and deliver the paper copy to you or other parties, (2) your electronic signature will be legally valid and binding if attached to or incorporated into the paper copy and (3) after we convert this Lease to paper, only the paper copy will be evidence of your obligations to us.

**THIS LEASE CONTAINS THE ENTIRE AGREEMENT BETWEEN YOU AND US.** There are no other agreements between you and us except those included in writing in this Lease. No change of this Lease, no course of performance and no other agreement between you and us will be binding unless in writing and signed by you and us. Lessee (and Co-Lessee) initials C __LS__

**LIMITED RIGHT TO CANCEL**

By signing below, you agree that the section below in this Lease entitled "Limited Right to Cancel" will apply. The limited right to cancel this Lease will end when Assignee purchases this Lease or on the date that is __15__ days after the date of this Lease, whichever occurs earlier.

LESSEE: D __LISETTE SANTIAGO__ CO-LESSEE: D __N/A__

**NOTICE:** (1) BY SIGNING BELOW, YOU AGREE TO ALL THE PROVISIONS ON ALL PAGES OF THIS LEASE. (2) IF THIS LEASE CONTAINS ANY BLANK SPACES, HAVE THEM FILLED IN. (3) YOU ARE ENTITLED TO A COMPLETELY FILLED-IN COPY OF THIS LEASE AND OF ANY OTHER AGREEMENTS, POLICIES OR CERTIFICATES THAT YOU SIGNED OR AGREED TO PURCHASE.

**NOTICE:** PRIOR TO SIGNING THIS LEASE, READ THE SECTIONS BELOW FOR OTHER DISCLOSURES REQUIRED BY LAW AND OTHER TERMS AND CONDITIONS OF THIS LEASE.

This is a copy of the customer's completed signed electronically held by Route One LLC

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| YOU SIGNED THIS LEASE AND RECEIVED A COPY AT: | ORLANDO | FL | on | December | 7th | 2019 |
| | (CITY) | (STATE) | | (Mo.) | (Day) | (Yr.) |

LESSEE: _LISETTE SANTIAGO_  CO-LESSEE: _N/A_

BY: E _LISETTE SANTIAGO_   BY: E _N/A_

Dealer accepts this Lease and hereby assigns all of its right, title and interest in and to this Lease and in the Vehicle described herein to Assignee under the terms of the World Omni Financial Corp. Lease Dealer Agreement.

Dealer/Lessor: _Toyota of Orlando_   By: F SA

## VEHICLE MAINTENANCE, USE AND REQUIRED INSURANCE

**31. MAINTENANCE, REPAIRS AND OPERATING EXPENSES.** YOU ARE RESPONSIBLE FOR AND AGREE TO PAY FOR ALL MAINTENANCE AND REPAIRS TO KEEP THE VEHICLE IN GOOD WORKING ORDER AND CONDITION AND ANY OTHER EXPENSES ASSOCIATED WITH OPERATING THE VEHICLE. YOU AGREE TO SERVICE THE VEHICLE ACCORDING TO THE MANUFACTURER'S RECOMMENDATIONS AS OUTLINED IN THE OWNER'S MANUAL FOR THE VEHICLE AND, IF APPLICABLE, THE MAINTENANCE SCHEDULE FOLDER, AND AS REQUESTED BY THE MANUFACTURER IN ANY RECALL CAMPAIGN, AND YOU WILL COMPLETE ALL NECESSARY SERVICE RECORDS. YOU AGREE TO USE ORIGINAL EQUIPMENT MANUFACTURER'S PARTS FOR ANY REPAIRS OR REPLACEMENT PARTS UNLESS WE SPECIFICALLY APPROVE THE USE OF NON-ORIGINAL EQUIPMENT MANUFACTURER'S PARTS IN ADVANCE AND IN WRITING.

**32. STANDARDS FOR WEAR AND USE.** EXCESSIVE WEAR AND USE INCLUDES BUT IS NOT LIMITED TO: (A) GLASS THAT IS DAMAGED OR THAT YOU HAVE TINTED; (B) DAMAGED BODY, FRAME, FENDERS, METAL WORK, TRIM OR PAINT; (C) MISSING WHEEL COVERS, JACK OR WHEEL WRENCH; (D) TORN DASH, FLOOR COVERS, SEATS, HEADLINERS, UPHOLSTERY OR INTERIOR WORK OR TRUNK LINERS; (E) ANY TIRES (INCLUDING SPARE) THAT ARE MISSING, NOT OF COMPARABLE QUALITY TO THE ORIGINALS OR WITH LESS THAN 1/8 INCH OF TREAD REMAINING; (F) DAMAGE FROM WATER, HAIL OR SAND; OR (G) ANY DAMAGE THAT MAKES THE VEHICLE EITHER UNSAFE OR UNLAWFUL TO OPERATE.

**33. USE AND SUBLEASING.** You agree that:
a. Only authorized licensed drivers will operate the Vehicle;
b. Neither you nor any other person will operate the Vehicle while under the influence of alcohol, illegal narcotics or prescription or non-prescription drugs if the instructions prohibit operating a motor vehicle;
c. You will keep the Vehicle free of all fines, liens and encumbrances and if you do not, any amounts paid by us shall be an additional amount owed by you under this Lease;
d. You will not use the Vehicle illegally, improperly, for hire or contrary to the manufacturer's recommendations;
e. Except for 30 days or less to Canada, you will not remove the Vehicle from the continental United States;
f. You will not alter, mark or install equipment in the Vehicle without our consent; and
g. You will not assign, transfer, sublease, rent or pledge this Lease or the Vehicle without our written consent, nor will you interfere with our ownership of the Vehicle.

**34. NOTICE OF ACCIDENTS AND COOPERATION.** You agree to cooperate fully with us and any insurance company in the investigation and defense of any and all claims arising from possession and use of the Vehicle. You will make a complete report to Assignee within 48 hours after any accident, theft or loss involving the Vehicle. You will comply with all laws and regulations requiring the reporting of accidents, thefts or loss involving the Vehicle.

**35. INSURANCE: REQUIRED PUBLIC LIABILITY AND PHYSICAL DAMAGE INSURANCE.** During the term of this Lease and until you return the Vehicle you must maintain Public Liability and Physical Damage Insurance on the Vehicle that covers both you and us for bodily injury, death and property damage. You are required to provide to us verification of insurance on the Vehicle in the following coverages and amounts: (a) automobile liability insurance not less than the minimums mandated by the state where the Vehicle is registered; (b) collision insurance for the full value of the Vehicle with a deductible amount of not more than $1,000; (c) comprehensive, fire and theft insurance for the full value of the Vehicle with a deductible of not more than $1,000; and (d) uninsured/underinsured motorist insurance with limits of not less than the minimum liability limits mandated by the state where the Vehicle is registered. An insurance policy that limits recovery to a stated value for the Vehicle is NOT acceptable. You will continuously maintain effective insurance in the coverages and amounts specified above. You affirm that such insurance is in force on the date of this Lease. Named Driver Exclusions or other Named Driver or other non-standard limiting endorsements or exclusions are NOT acceptable. NO OTHER TYPES OF INSURANCE ARE REQUIRED BY US.

YOU AGREE THAT YOUR OWN LIABILITY AND PERSONAL INJURY PROTECTION INSURANCE WILL PROVIDE PRIMARY INSURANCE COVERAGE UP TO ITS FULL POLICY LIMITS UNDER THE AGREEMENT.

Assignee must be named as an "additional named insured" and "loss payee" on your insurance policy. Each policy must provide that Assignee will be notified in writing at least 10 days before the insurance is cancelled or any coverage is altered, and that Assignee or its representative may have full access to your insurer's claim file in the event of an insurable loss. You have the option of furnishing the required amount of insurance either (i) through any existing policies owned or controlled by you and issued by a carrier reasonably acceptable to us, or (ii) by purchasing the required coverage separately through any insurer reasonably acceptable to us. In the event of accidents, theft, or other loss involving the Vehicle we will be entitled to any payments or proceeds that you or we receive related to diminished value of the Vehicle (as distinguished from payments for repairs), whether received from a third party's insurance company or otherwise and you assign your interest in any such proceeds to us.

You authorize us to: (a) receive or collect any money paid under the insurance; (b) direct any insurer to pay all insurance proceeds directly to us; (c) endorse checks or drafts relating to the insurance payments on your behalf; and (d) settle or release any claim with respect to the insurance. If you have an accident or loss or damage of any kind to the Vehicle, you must promptly notify the insurance company and us, and take all actions required by law and the insurance company to protect our interest.

## DEFAULT

**36. DEFAULT.** You will be in default of this Lease if any of the following occur:
a. You do not make a payment when it is due;
b. You or any of your property becomes the subject of a proceeding (voluntary or involuntary) in bankruptcy;
c. You become incompetent or die (if a natural person) or dissolve (if not a natural person);
d. Any information in your credit application (including driver information) is materially false or misleading;
e. The Vehicle is stolen, lost, destroyed, seized or confiscated or is otherwise rendered unavailable or unsuitable for use;
f. You assign, transfer, sublease, rent or pledge this Lease or the Vehicle without our permission or otherwise violate Section 33;
g. You otherwise fail to comply with any other term, provision or condition of this Lease or fail to keep any other promise made to us; or
h. If at any time you appear on the list of Specially Designated Nationals and Blocked Persons published by the U.S. Treasury Department's Office of Foreign Assets Control, or any other similar or successor list containing names of persons with whom we cannot do business, or we are prohibited at any time by any federal or state law, rule, regulation or order from doing business with you.

**37. WHAT YOU OWE UPON DEFAULT.**
a. _Early Termination Because of Total Loss._ If you suffer a total loss of the Vehicle, you are obligated to notify your insurance company and to coordinate with your insurance company to ensure payment by your insurance company on your claim to us. If we do not continue this Lease by substituting a comparable replacement vehicle (see Section 37(c)), and you have complied with all other provisions of this Lease, then this Lease will terminate early. If receive all of the insurance proceeds due under the insurance policy that you had in accordance with Section 35 and the proceeds we receive reflect payment of a claim for the full value of the Vehicle, you will owe us the sum of the following amounts; (i) the amount of your deductible under your insurance policy, unless your deductible is waived by your insurance company; (ii) the total amount of any deductions by your insurance company from the value of the Vehicle used to compute the insurance proceeds we received resulting from past due premiums or the condition of the Vehicle before the total loss occurred; (iii) any official

fees or taxes due in connection with the total loss of the Vehicle or otherwise due under this Lease; and (iv) all Monthly Payments due, and all other amounts, including Late Payment Charges (see Section 26), due under this Lease and not paid up to the date of the total loss of the Vehicle. If we do not receive all of the insurance proceeds due under the insurance policy that you had in accordance with Section 35 or the proceeds we receive do not reflect payment of a claim for the full value of the Vehicle, you will owe us the amounts due under Section 37(b), calculated using any insurance proceeds we receive plus any amounts we receive from the sale of the Vehicle, if it is returned to us, as the Realized Value of the Vehicle.

    b.   Early Termination Because of Any Other Default. Subject to any right to notice you may have under the law, if we terminate this Lease because of any other default, then you agree that you will owe us: (i) the Early Termination Charge (see Section 39), if any; (ii) all collection, repossession, storage, preparation and sale expenses of the Vehicle, and reasonable collection agency fees; (iii) attorneys' fees and disbursements incurred after default and referral to an attorney who is not our salaried employee, not to exceed 15% of the amount you owe us (or such lesser rate as may be required under applicable law); and (iv) simple interest at a rate not to exceed 15% per annum (or such lesser rate as may be required under applicable law) on all expenses and fees paid or incurred by us and all obligations that you owe after termination, other than earned but unpaid Rent Charges (see Section 12).

    c.   Continuation of Lease. In the event of a total loss of the Vehicle as described in Section 37(a), instead of declaring a default we may elect to continue the Lease by substituting a comparable replacement vehicle reasonably acceptable to you and us.

**38. OUR RIGHTS AND REMEDIES IF YOU DEFAULT.** If you are in default (see Section 36) we will have, in addition to all of the rights and remedies provided by this Lease and by law, the right to sue you for damages and/or recovery of the Vehicle, after providing any notice required by law. We will have the right to accelerate the balance for non-payment of an installment without obligation to give you opportunity to cure the default. We also may take the Vehicle from you without demand if permitted by law (or, if demand is required by law, upon compliance with such legal requirements). You agree that we may enter your property or the property where the Vehicle is stored in order to take it, so long as it is done peaceably. If we take the Vehicle you will not be released from any obligation under this Lease.

## ENDING YOUR LEASE

**39. VOLUNTARY EARLY TERMINATION.** Upon prior notice to us, you may terminate this Lease early. If you do so, and if you do not exercise your purchase option at that time (see Section 42), you will owe us the "Remaining Payments Termination Charge," calculated as follows: (i) the Base Monthly Payment (see Section 15) times the number of Monthly Payments not yet due, PLUS (ii) any official fees and taxes related to the termination of this Lease or otherwise due under this Lease, PLUS (iii) any excess mileage charge (see Section 22) calculated as though this Lease had ended on the scheduled termination date, PLUS (iv) our reasonable estimate of the cost of any repairs or replacements resulting from or related to excess wear or use that are needed to put the Vehicle in good working order or condition, regardless of whether such repairs or replacements are in fact made, PLUS (v) the Disposition Fee (see Section 3), PLUS (vi) any other amounts unpaid by you, including Late Payment Charges (see Section 26), arising under this Lease and not prohibited by applicable law.

Alternatively, at your option, instead of the Remaining Payments Termination Charge, you may elect, by notice to us in writing, to owe us the "Early Termination Charge," calculated as follows: (a) the Base Monthly Payment (see Section 15) times the number of Monthly Payments not yet due, PLUS (b) any official fees and taxes related to the termination of this Lease, or otherwise due under this Lease, PLUS (c) a Disposition Fee in the amount set forth in Section 3, PLUS (d) any other amounts unpaid by you, including Late Payment Charges (see Section 26), other than excess mileage and excessive wear and use charges, arising under this Lease and not prohibited by applicable law, PLUS (e) the Residual Value (see Section 10), MINUS (f) the unearned Rent Charge (see Section 12 for the Rent Charge) calculated in accordance with an Actuarial Method, MINUS (g) the "Realized Value" (as specified below) of the Vehicle. If the amount of the Early Termination Charge as calculated above is less than zero, the Early Termination Charge shall be zero.

Under the Actuarial Method of determining the unearned Rent Charge, the monthly Rent Charges (including those for the month in which the early termination occurs) are earned in advance on the scheduled due dates of your Monthly Payments and your Monthly Payments are deemed to have been received on their scheduled due dates. The "Realized Value" of the Vehicle is, at our election, either: (1) the estimated wholesale value of the Vehicle as determined by us using commercially reasonable valuation guides, (2) the wholesale value of the Vehicle as determined by a qualified independent appraiser we engage, or (3) the amount we receive at the time of disposition of the Vehicle at wholesale. As an alternative, you may obtain (at your expense) from a qualified independent appraiser acceptable to us a written appraisal of the wholesale value of the Vehicle. This appraised value will constitute the "Realized Value" of the Vehicle and will be final and binding on you and us.

**40. RETURN OF VEHICLE AT SCHEDULED TERMINATION DATE.** This Lease is scheduled to end 1 month after the last Monthly Payment is due, unless you and we agree to extend this Lease. If you and we extend this Lease, the scheduled termination date will be the date upon which you and we agree in writing. On the scheduled termination date of this Lease, you may either purchase the Vehicle from us (see Section 41) or return the Vehicle to a reasonable location designated by us in good condition, without damage, excessive wear or use (see Sections 22 & 32) and without excess mileage (see Section 22), and you will pay any amount you owe under this Lease, plus a Disposition Fee in the amount set forth in Section 3. You also agree to pay (a) the cost of such repairs or replacements needed because of excessive wear or use (see Sections 22 & 32) regardless of whether such repairs or replacements are made in order to put the Vehicle in good working order and condition and (b) any excess mileage charge as described in Section 22. If you fail to return the Vehicle on its scheduled termination date, you agree to continue to pay the Total Monthly Payment shown in Section 20. Your continued payment of these amounts does not permit you to keep the Vehicle beyond the scheduled termination date of this Lease, and you agree to pay us for any damage we may suffer because you failed to return the Vehicle at the end of the Lease.

**41. PURCHASE OPTION AT END OF LEASE TERM.** You have the option to purchase the Vehicle "AS IS" at the scheduled termination of this Lease, provided all sums due under this Lease have been paid by you and you notify us 15 days prior to the scheduled termination of this Lease. The price you will pay us will be the Residual Value (see Section 10) PLUS a purchase option fee in the amount set forth in Section 23. You will also owe any official fees and taxes, documentary fees, tag or title transfer charges or fees, or other amounts charged in connection with the purchase of the Vehicle.

**42. OPTION TO PURCHASE LEASED PROPERTY PRIOR TO THE END OF THE LEASE.** Prior to the scheduled termination of this Lease, upon prior notice, you have the option to purchase the Vehicle "AS IS" for the following amount: (a) the Base Monthly Payment (see Section 15) times the number of Monthly Payments not yet due, PLUS (b) the Residual Value (see Section 10), PLUS (c) an early purchase option fee equal to the amount of the end of Lease term purchase option fee set forth in Section 23, MINUS (d) the unearned Rent Charge (see Section 12 for the Rent Charge) calculated in accordance with an Actuarial Method. Under this method of determining the unearned Rent Charge, the monthly Rent Charges (including those for the month in which the purchase occurs) are earned in advance on the scheduled due dates of your Monthly Payments and your Monthly Payments are deemed to have been received on their scheduled due dates. You will also owe: (1) any official fees and taxes, documentary fees, tag or title transfer charges or fees, or other amounts charged in connection with the purchase of the Vehicle and (2) any other amounts unpaid by you, including Late Payment Charges (see Section 26), other than excess mileage and excessive wear and use charges, arising under this Lease and not prohibited by applicable law.

**43. SECURITY DEPOSIT.** You agree to pay a refundable security deposit as indicated in Section 5 (c). We will deduct from such deposit any charges you may owe under this Lease. We may retain the security deposit until all amounts you owe under this Lease are paid. We will refund to you any part of the security deposit that is left. No interest, increase, or profits will accrue to you on the security deposit while held by us. We may commingle the security deposit with our own funds. We have no fiduciary obligation with respect to the security deposit.

**44. ODOMETER DISCLOSURE.** Federal law requires you to disclose the Vehicle's mileage and certain related information to the Lessor at the end of the Lease and at other times in connection with the transfer of ownership of the Vehicle.

## ADDITIONAL PROVISIONS

**45. ASSIGNMENT BY US.** You agree that Assignee and any future assignee of this Lease may pledge or reassign this Lease and ownership of the Vehicle and any of its benefits or burdens except as otherwise provided by applicable law. You agree that neither the Assignee nor SETF (if it is not the Assignee) shall have to make repairs to the Vehicle, maintain the Vehicle, obtain any insurance or perform any other service the Dealer has agreed to perform under this Lease; and you will look directly to the Dealer for these services.

**46. LIMITATION OF LIABILITY.** We shall not be liable for any loss of profits or other indirect or consequential damages or inconveniences (except for those relating to personal injury) which may result to you from any damages to, or defect in, the Vehicle or for the time needed to repair or service the Vehicle. Monthly Payments (see Section 2) shall continue and not be reduced or delayed during this time.

**47. RETURNED PAYMENT CHARGE.** If any payment (including any electronic funds transfer) you make is not honored or is returned for any reason, you agree to pay a fee not to exceed the greater of: 1) $25 if the payment does not exceed $50; $30 if the payment is more than $50 but does not exceed $300; or $40 if the payment is more than $300; or 2) 5% of the face amount of the payment instrument.

**48. LICENSE, REGISTRATION, TAXES AND INSPECTION.** You agree to pay for titling, registration and licensing and for all inspections of the Vehicle required by any government authority during the term of this Lease. YOU WILL ALSO PAY ALL EXCISE, USE, PERSONAL PROPERTY, GROSS RECEIPTS AND OTHER TAXES INCURRED DURING THE TERM OF THIS LEASE WITH RESPECT TO THE VEHICLE EXCEPT THOSE LEVIED ON OUR NET INCOME. The taxes you must pay will either be included in the payments you make under this Lease or separately billed to you by Lessor. Lessor may change your Monthly Payment for increases or decreases in taxes.

True and Accurate Completed Copy - UCC Non-Authoritative Copy

49. **INSPECTION.** You agree to allow us to inspect the Vehicle at any reasonable time and place. If we ask to inspect the Vehicle, you will tell us the location of the Vehicle. Any inspection will be solely for our benefit.

50. **INDEMNIFICATION.** You agree to indemnify and hold us, our affiliates, assignees, pledgees, agents and employees harmless from all losses, liability, damages, injuries, claims, demands and expenses arising out of the condition, maintenance, use or operation of the Vehicle.

51. **SEVERABILITY AND CHOICE OF LAW.** If any part of this Lease is not valid according to any applicable law, all other parts nevertheless will remain enforceable. The law at the place where you signed this Lease will govern this Lease.

52. **HEIRS AND REPRESENTATIVES.** This Lease will bind and benefit you, your heirs, representatives and successors and will also bind and benefit us and our successors and assigns.

53. **NOTICES.** All notices to you will be made to the last address provided to us in writing. All notices to us made in accordance with the provisions of this Lease must be made in writing to the respective addresses set forth above or to such other address as we provide in accordance with this Section 53.

54. **CELL PHONES AND E-MAIL:** If you give us a cellular or mobile telephone number, you acknowledge that by doing so you consent to the use of that telephone number to call you or to send you a text message on your cellular or mobile telephone with regard to this Lease. You further agree and consent that we may use auto-dialers and pre-recorded messages in connection with any telephone contacts made with you, including, but not limited to, calls made and text messages sent to your cellular or mobile telephone. You understand and agree that if we call your cellular or mobile telephone or send you a text message on your cellular or mobile telephone, depending upon the type of plan or program you have with your telecommunications provider, you may incur a cost or charge for such telephone call or text message. Finally, you acknowledge that if you gave us an e-mail address you are specifically authorizing us to send you messages about this Lease using that e-mail address.

55. **NO WAIVER.** Our excuse of a default does not mean that a later occurrence of that or any other default will be excused. Any failure or delay by us in exercising any of our rights or remedies under this Lease will not cause us to lose them, and we may exercise them at any later time.

56. **LIABILITY.** If there are more than one of you, each of you shall be liable, separately and together, for the Total of Payments (see Section 4) and all other amounts that may at any time be due and owing to us under this Lease.

57. **DELIVERY RECEIPT.** By signing this Lease, you agree that (a) you received and examined the Vehicle described in this Lease, (b) the Vehicle is as described in this Lease, and (c) the Vehicle is in good working order and condition.

58. **AUTHORITY OF DEALER. THE DEALER IS AN INDEPENDENT CONTRACTOR AND IS NOT AFFILIATED WITH SETF OR ASSIGNEE (IF NOT SETF) AS AN AGENT, PARTNER OR JOINT VENTURER. NEITHER THE DEALER NOR ANY OF ITS EMPLOYEES IS AUTHORIZED TO MAKE ANY ORAL OR WRITTEN PROMISE, AFFIRMATION, REPRESENTATION OR WARRANTY TO YOU ON BEHALF OF SETF OR ASSIGNEE (IF NOT SETF).**

59. **LIMITED RIGHT TO CANCEL.**

a. **Right to Cancel.** Lessor agrees to deliver the Vehicle to Lessee on the date this Lease is signed by you and us. As Lessee, you understand that it may take a few days for us to verify your credit, locate an Assignee willing to purchase this Lease on the exact terms stated on the first page of this Lease, and assign this Lease to Assignee. You agree that Lessor has the number of days stated on the second page of this Lease under Limited Right to Cancel to assign this Lease. You agree that we may cancel this Lease, if we are unable to assign this Lease to an Assignee and under an assignment acceptable to us within the stated time period. Nothing in this section gives you the right to cancel this Lease, whether for reasons related to Lessor's assignment of this Lease or otherwise.

b. **Notice to Cancel.** If we elect to cancel we will give you written notice (or notice in any other manner required by law). Upon receipt of such notice, you must immediately return the Vehicle to us in the same condition as when leased, reasonable wear and use excepted. After return of the Vehicle, we agree to give you back all consideration received in accordance with the terms of this Lease and other documents relating to the Vehicle.

c. **Failure to Return Vehicle.** If you do not immediately return the Vehicle, we may use any legal means to take it back (including repossession) and you will be liable for all expenses incurred by us in taking the Vehicle from you, including reasonable attorney's fees. While the Vehicle is in your possession, all terms of this Lease, including those relating to use of the Vehicle and insurance for the Vehicle, are in full force and you assume all risk of loss or damage to the Vehicle. You must pay all reasonable costs for repair of any damage done to the Vehicle while the Vehicle is in your possession.

d. **Option to Purchase Vehicle.** In the alternative to returning the Vehicle, you may immediately purchase the Vehicle (see Section 42) with other funds arranged by you, or you may immediately attempt to negotiate and sign a new lease agreement with us based on different lease terms. However, nothing stated herein obligates us to negotiate or sign a new lease agreement or to waive our right to cancel this Lease and retake possession of the Vehicle as provided above (see Section 59(a)).

e. **Effect on Cancellation of Lease.** The terms of this Limited Right to Cancel survive Lessor's cancellation of this Lease.

60. **OPTIONAL INSURANCE AND OTHER PRODUCTS.** Upon default or early termination of this Lease, you authorize us to claim benefits under any optional insurance or other products you purchased in connection with this Lease or cancel such products and obtain refunds of unearned charges to reduce what you owe or to repair the Vehicle. If we obtain refunds of unearned charges with respect to any optional insurance or other products you purchased in connection with this Lease, you agree that we may credit such refunds to your account.

## ARBITRATION CLAUSE

61. **PLEASE REVIEW - IMPORTANT - AFFECTS YOUR LEGAL RIGHTS.**

1. EITHER YOU OR WE (LESSOR or ASSIGNEE) MAY CHOOSE TO HAVE ANY DISPUTE BETWEEN US DECIDED BY ARBITRATION AND NOT IN COURT OR BY JURY TRIAL.
2. IF A DISPUTE IS ARBITRATED, YOU WILL GIVE UP YOUR RIGHT TO PARTICIPATE AS A CLASS REPRESENTATIVE OR CLASS MEMBER ON ANY CLASS CLAIM YOU MAY HAVE AGAINST US INCLUDING ANY RIGHT TO CLASS ARBITRATION OR ANY CONSOLIDATION OF INDIVIDUAL ARBITRATIONS.
3. DISCOVERY AND RIGHTS TO APPEAL IN ARBITRATION ARE GENERALLY MORE LIMITED THAN IN A LAWSUIT, AND OTHER RIGHTS THAT YOU AND WE WOULD HAVE IN COURT MAY NOT BE AVAILABLE IN ARBITRATION.

Any claim or dispute, whether in contract, tort, statute or otherwise (including the interpretation and scope of this Arbitration Clause, and the arbitrability of the claim or dispute), between you and us or our employees, agents, successors or assigns, which arises out of or relates to your credit application, lease or condition of this Vehicle, this contract or any resulting transaction or relationship (including any such relationship with third parties who do not sign this contract) shall, at your or our election, be resolved by neutral, binding arbitration and not by a court action. If federal law provides that a claim or dispute is not subject to binding arbitration, this Arbitration Clause shall not apply to such claim or dispute. Any claim or dispute is to be arbitrated by a single arbitrator on an individual basis and not as a class action. You and we expressly waive any right that either of us may have to arbitrate a class action. You may choose the American Arbitration Association, 1633 Broadway, Floor 10, New York, NY 10019 (www.adr.org) or any other organization to conduct the arbitration subject to our approval. You may get a copy of the rules of an arbitration organization by contacting the organization or visiting its website.

Arbitrators shall be attorneys or retired judges and shall be selected pursuant to the applicable rules. The arbitrator shall apply governing substantive law in making an award. The arbitration hearing shall be conducted in the federal district in which you reside unless the Lessor is a party to the claim or dispute, in which case the hearing will be held in the federal district where this contract was executed. We will advance your filing, administration, service or case management fee and your arbitrator or hearing fee all up to a maximum of $5000, which may be reimbursed by decision of the arbitrator at the arbitrator's discretion. Each party shall be responsible for its own attorney, expert and other fees, unless awarded by the arbitrator under applicable law. If the chosen arbitration organization's rules conflict with this Arbitration Clause, then the provisions of this Arbitration Clause shall control. The arbitrator's award shall be final and binding on all parties, except that in the event the arbitrator's award for a party is $0 or against a party is in excess of $100,000, or includes an award of injunctive relief against a party, that party may request a new arbitration under the rules of the arbitration organization by a three-arbitrator panel. The appealing party requesting new arbitration shall be responsible for the filing fee and other arbitration costs subject to a final determination by the arbitrators of a fair apportionment of costs. Any arbitration under this Arbitration Clause shall be governed by the Federal Arbitration Act (9 U.S.C. § 1 et. seq.) and not by any state law concerning arbitration. You and we retain any rights to self-help remedies, such as repossession. You and we retain the right to seek remedies in small claims court for disputes or claims within that court's jurisdiction, unless such action is transferred, removed or appealed to a different court. Neither you nor we waive the right to arbitrate by using self-help remedies or filing suit. Any court having jurisdiction may enter judgment on the arbitrator's award. This Arbitration Clause shall survive any termination, payoff or transfer of this contract. If any part of this Arbitration Clause, other than waivers of class action rights, is deemed or found to be unenforceable for any reason, the remainder shall remain enforceable. If a waiver of class action rights is deemed or found to be unenforceable for any reason in a case in which class action allegations have been made, the remainder of this Arbitration Clause shall be unenforceable.

True and Accurate Completed Copy - UCC Non-Authoritative Copy